**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

HELEN MARTEEN,

                Plaintiff,                                  CASE NO.:

v.                                                JURY TRIAL DEMANDED

DORAL AUTOMOTIVE GROUP LLC,

                Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

       Plaintiff, HELEN MARTEEN (hereinafter referred to as "Plaintiff" or "Ms. Marteen"), by and through her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant, DORAL AUTOMOTIVE GROUP LLC (hereinafter referred to as "Defendant" and/or "DAG"), and alleges as follows:

**INTRODUCTION**

       1.      This case involves a 68-year-old disabled woman who was discriminated against, retaliated against, and unlawfully terminated by her employer on the basis of her age, disability, and for requesting a reasonable accommodation.

       2.      Plaintiff seeks monetary relief to redress Defendant's unlawful employment practices in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Family Medical Leave Act, 29 U.S.C. § 2612 *et seq.* ("FMLA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Florida Civil Rights Act of 1992, § 760.01, *et seq.*, Florida Statutes ("FCRA"), and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A, *et seq.* ("MDHRO"), and Defendant's deprivation of Plaintiff's civil right to pursue equal employment opportunities.

1

## PARTIES

3.      Ms. Marteen is an individual female residing in Miami-Dade County, Florida.

4.      DORAL AUTOMOTIVE GROUP LLC ("Defendant DAG" and/or "Defendant") is a Florida Limited Liability Company, with its principal place of business located at 9000 NW 12th Street, Doral, FL 33172.

5.      At all times material, Defendant employed Plaintiff at 11020 SW 186th St., Miami, FL, 33157 (hereinafter referred to as the "Cutler Bay location").

6.      The exact number of employees of Defendant is unknown, but upon information and belief, there are well more than the statutory minimum under the ADEA, FMLA, ADA, FCRA and the MDHRO.

7.      At all times material, Defendant was an "employer" within the meaning of 29 U.S.C. § 630(b), 29 U.S.C. § 2611(4)(a), 42 U.S.C. § 12111(5)(A), § 760.02(7), Florida Statutes and § 11A-25 of the MDHRO.

8.      At all times material Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 630(f).

9.      At all times material, Plaintiff was an "eligible employee" of Defendant within the meaning of 29 U.S.C. § 2611(2).

10.     At all times material, Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8).

11.     At all times material, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 29 U.S.C. § 623, 29 U.S.C. § 2612, and 42 U.S.C. § 12101.

13.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**ADMINISTRATIVE PREREQUISITES**

14.     Ms. Marteen has complied with all administrative requirements.

15.     On or about March 12, 2024, Ms. Marteen timely filed a Charge of Discrimination (Charge No. 510-2024-05147) against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

16.     On or around October 15, 2024, the EEOC issued Plaintiff's Notice of Right to Sue against Defendant.

17.     On or around November 18, 2024, the MDCHR issued Plaintiff's Notice of Right to Sue against Defendant.

18.     Ms. Marteen is timely filing this action within ninety (90) days of receipt of each Notice of Right to Sue.

19.     Ms. Marteen is timely commencing this action more than 180 days following the filing of her charge of discrimination.

## FACTUAL ALLEGATIONS

20.     At all times material, Ms. Marteen is an individual woman above the age of 40 and is therefore a protected class member.

21.     At all times material, Ms. Marteen was diagnosed with diabetes and is therefore a protected class member.

22.     In or around July of 2022, Defendant DAG hired Ms. Marteen as a Receptionist.

23.     During Ms. Marteen's employment, Defendant DAG, by and through its management and employees, subjected Ms. Marteen to discriminatory conduct, including but not limited to the following: 1) subjecting Ms. Marteen to discriminatory comments regarding her age, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) assigning unfavorable tasks to Ms. Marteen, 4) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 5) refusing Ms. Marteen any lunch breaks following her request for a reasonable accommodation, 6) demoting Ms. Marteen following her return from medical leave, 7) reducing Ms. Marteen's hours after she requested an accommodation, 8) failing to give Ms. Marteen employment benefits similar to other employees such as FMLA leave, and 9) unlawfully terminating Ms. Marteen's employment, among others.

24.     At all times material, Ms. Marteen was a satisfactory employee.

25.     At all times material, Defendant DAG employed Maria Diaz (hereinafter "Ms. Diaz") as a manager.

26.     At all times material, Ms. Diaz had direct supervisory authority over Ms. Marteen, including but not limited to the ability to change Ms. Marteen's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Ms. Marteen.

27.     In or around September of 2022, Defendant promoted Ms. Marteen from her Receptionist position to an Auto Alert Specialist. Ms. Marteen's hourly rate went from $16.00 per hour as a Receptionist to $13.00 per hour as an Auto Alert Specialist. However, the Auto Sales Specialist promotion came with a commission on all sales and referrals that Ms. Marteen completed. To be clear, this commission bonus increased Ms. Marteen's overall wages despite the hourly rate decrease.

28.     In or around February of 2023 through March of 2023, Ms. Marteen trained to become an Auto Alert Specialist, and by the end of March, she was fully able to conduct the roles of the Auto Alert Specialist position.

29.     In or around April of 2023, Ms. Marteen began experiencing pervasive discriminatory conduct when Defendant DAG promoted Caridad Castro ("Ms. Castro") to the General Manager position for Defendant's Cutler Bay location.

30.     At all times material, Ms. Castro had direct supervisory authority over Ms. Marteen, including but not limited to the ability to change Ms. Marteen's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Ms. Marteen.

31.     From the onset of Ms. Castro's promotion, it was clear that Ms. Castro did not want Ms. Marteen working for Defendant.

32.     In fact, Ms. Castro made explicitly clear that she believed Ms. Marteen was too old to be working for Defendant, and even told Ms. Marteen that Ms. Marteen's job was too fast paced for somebody Ms. Marteen's age.

33.     Ms. Castro continued to state that Ms. Marteen should look for employment with another company because the slower-paced work would be more suitable for somebody of Ms. Marteen's age.

34.     Ms. Castro also told stated that Ms. Marteen's position was not meant to be for an older person.

35.     Ms. Marteen was shocked with what Ms. Castro told her. Ms. Marteen had been working in this position for months without any issue or write-ups, but suddenly the new General Manager told her that she should seek new employment strictly because of her age.

36.     Ms. Castro's discriminatory remarks embarrassed and humiliated Ms. Marteen, but Ms. Marteen responded that she would continue to happily and successfully perform her job.

37.     Following this interaction, Ms. Marteen felt a drastic shift in her work environment.

38.     William Hallstrom ("Mr. Hallstrom"), employed by Defendant DAG as a Service Manager at the Cutler Bay location, was recruited by Ms. Castro to form an alliance against Ms. Marteen.

39.      At all times material, Mr. Hallstrom had direct supervisory authority over Ms. Marteen, including but not limited to the ability to change Ms. Marteen's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Ms. Marteen.

40.     Soon after Ms. Castro's promotion, Mr. Hallstrom also began discriminating against Ms. Marteen because of her age.

41.     In or around early May of 2023, Mr. Hallstrom began harassing Ms. Marteen, screaming at her to "SHUT UP" while pointing his finger in her face. Mr. Hallstrom did not allow Ms. Marteen to ask questions, and would stand over her in an intimidating fashion while demanding she stop talking.

42.     Ms. Marteen felt attacked and uncomfortable after Mr. Hallstrom targeted her, and started to feel anxious and worried while at work.

43.     In or around early May of 2023, Ms. Castro increased the number of tasks assigned to Ms. Marteen. Specifically, Ms. Castro had Ms. Marteen complete and file hours-worth of paperwork for a matter unrelated to Ms. Marteen's position.

44.     Ms. Marteen did not understand why she was being assigned additional tasks that did not pertain to her position, including filling out paperwork for a third-party car delivery company. Ms. Marteen realized that this was a part of Ms. Castro's ongoing effort to force her out.

45.     To be clear, Ms. Castro did not assign any other employee in the Auto Alert Specialist position the paperwork-related tasks or assignments she assigned to Ms. Marteen.

46.     On numerous occasions, Ms. Castro and Mr. Hallstrom walked to Ms. Marteen's desk and screamed at her to do more work and assigned her additional tasks that were not traditionally completed by an Auto Alert Specialist. Ms. Castro and Mr. Hallstrom frequently yelled at Ms. Marteen rather than having a civil conversation, and many of these abusive interactions were witnessed by other employees and sometimes customers.

47.     In or around June of 2023, Ms. Castro hired three new employees: Mariah Vega ("Ms. Vega"), Yeridinia Verdicia Lemus ("Ms. Lemus"), and Jennifer Rodriguez Silva ("Ms. Silva"). Each of these three newly hired employees was younger than 40 years of age, over 25 years younger than Ms. Marteen.

48.     Defendant DAG instructed Ms. Marteen to train one of these new employees.

49.     Ms. Castro told Ms. Marteen that they would be replacing Ms. Marteen, specifically because Ms. Marteen was too old to work in a fast-paced environment, and the new hires were young.

50.     Ms. Marteen was extremely frustrated, humiliated, and embarrassed because her managers, Ms. Castro and Mr. Hallstrom continuously told her that she was not capable of performing her job simply because she was too old.

51.     Nevertheless, Ms. Marteen continued to work as hard as she could in order to provide for herself and succeed with the company.

52.     However, on or about September 21, 2023, Defendant's unlawful discriminatory treatment towards Ms. Marteen reached a new height.

53.     On or around September 21, 2023, Ms. Marteen was working at her station, minding her business. Again, Ms. Castro and Mr. Hallstrom eerily approached Ms. Marteen's desk, and suddenly started yelling at Ms. Marteen. Ms. Marteen had become accustomed to this treatment but learned to ignore them and focus on her work. Yet, this time something was different.

54.     Ms. Castro's rageful shouting became so overwhelming that Ms. Marteen started to feel physically unwell. Ms. Castro's rage persisted, and Ms. Marteen started feeling worse and worse.

55.     Suddenly, Ms. Marteen realized she could not breathe. In the middle of the workplace, in front of coworkers and clients, Ms. Marteen clutched her chest and dropped into her chair while gasping for air. Meanwhile, Ms. Castro's abuse endured.

56.     Ms. Castro and Mr. Hallstrom did not help Ms. Marteen. Ms. Castro and Mr. Hallstrom did not call for help or medical attention. Ms. Castro and Mr. Hallstrom simply stood by Ms. Marteen while watching her suffer.

57.     Ms. Castro and Mr. Hallstrom's abusive conduct caused Ms. Marteen to suffer a heart attack in the workplace.

58.     Another employee who had seen this series of events informed Edith Muniz ("Ms. Muniz"), employed by Defendant as the Human Resources Manager, of what happened, who then in turn called for medical attention.

59.     Ms. Marteen was rescued from Defendant DAG's workplace by the paramedics, who provided urgent and necessary medical attention.

60.     Ms. Castro and Mr. Hallstrom never apologized to Ms. Marteen for their behavior, and never spoke of Ms. Marteen's heart attack moving forward.

61.     Following Ms. Marteen's heart attack, Defendant DAG gave Ms. Marteen six (6) days off of work before asking her to return to work.

62.     Defendant DAG did not let Ms. Marteen use paid time off to cover any missed hours.

63.     Ms. Marteen asked to be placed on leave so she could recover, but Defendant DAG denied her request.

64.     Defendant DAG never informed Ms. Marteen about her protected medical leave despite Ms. Marteen suffering a heart attack in the workplace because of the conduct of Defendant's managers.

65.     On or around September 27, upon Ms. Marteen's return to work, Defendant demoted Ms. Marteen from her Auto Sales Specialist position making $13.00 per hour with a commission back to a Receptionist making $16.00 without commission and without any prior discussion.

66.     None of Defendant's other employees pay or positions was altered, including the young new hires.

67.    In fact, upon Ms. Marteen's return to work, she walked into her office to see Mr. Hallstrom clearing her desk, who then informed her that she was being reassigned to the reception area.

68.    Ms. Vega, one of the younger new employees, was sitting at Ms. Marteen's old desk. Ms. Marteen asked Ms. Vega why she was at that desk, and Ms. Vega responded that Ms. Castro reassigned her to the office, replacing Ms. Marteen.

69.    Later that day, Ms. Diaz told Ms. Marteen that she was being moved upstairs to work in a new office, to be safe from Ms. Castro and Mr. Hallstrom. It appeared that Ms. Diaz felt the personal need to protect Ms. Marteen from Defendant's other managers.

70.    Regardless, Ms. Castro continued to assign Ms. Marteen additional tasks that were unrelated to her position, such as taking over one of the younger employee's job duties, and filing paperwork for other employees.

71.    In or around November of 2023, Ms. Marteen submitted a request for an accommodated scheduled. Ms. Marteen requested to start her shift later in the day so that she could spend more time getting ready in the morning following her heart attack.

72.    Ms. Marteen was given a new schedule but was also met with a reduction in hours. The three younger employees who were hired to replace Ms. Marteen did not experience any reduction in hours. In fact, the younger employees began working more.

73.    After Ms. Marteen started to work her new schedule, Ms. Castro resumed her agenda of getting Ms. Marteen to quit.

74.    In or around late November of 2023, Ms. Castro ordered Ms. Marteen to eat her meals and use the restroom at home, prior to coming to work. To be clear, Ms. Castro informed

Ms. Marteen that she was no longer allowed to eat any food or use the restroom for the duration of her shift while working at Defendant's Cutler Bay Location.

75.     Defendant DAG put Ms. Marteen's health in jeopardy as she was insulin-dependent and the long hours without food caused her blood glucose levels to drop.

76.     Defendant DAG's management was well-aware that Ms. Marteen was diabetic as she had previously informed them of her diagnosis, but Defendant did not accommodate her. Ms. Marteen again explained to Ms. Castro that she was diabetic, but Ms. Castro did not care.

77.     Defendant DAG, by and through its manager Ms. Castro, denied Ms. Marteen, a then-67-year-old lady with diabetes, access to the restroom and the ability to eat during her shift.

78.     Ms. Castro's restrictions were isolated to and enforced solely upon Ms. Marteen.

79.     Ms. Marteen explained that given her health conditions, being diabetic and recently suffering a heart attack, it was not safe for her to spend hours without eating or using the restroom. However, Ms. Castro upheld Ms. Marteen's new conditions of employment.

80.     Ms. Marteen complained that the younger employees were allowed to eat and go to the restroom, but Ms. Castro ignored her.

81.     Further, Ms. Castro began to harshly scrutinize Ms. Marteen's work compared to the work of the younger employees, and even falsely accused Ms. Marteen of using her social media at work.

82.     Ms. Marteen was shocked why she was being reprimanded for allegedly using her social media at work while her younger coworkers had used their social media at work but were never reprimanded.

83.     Ms. Marteen wanted to be treated more fairly, so she provided extensive medical documentation to Ms. Castro with the hopes of having a more amicable work environment. Again,

11

this was ineffective as Ms. Castro and Mr. Hallstrom continued targeting Ms. Marteen because of her age and disability. Ms. Castro and Mr. Hallstrom continued to make insulting age-related comments to Ms. Marteen with the hopes she would quit.

84.     By means of example, on or around December 28, 2023, Ms. Marteen had successfully used her skills to help sell a car to a customer. This customer had previously purchased a car from Ms. Marteen when she was an Auto Sales Specialist, and the customer knew there was a referral/commission incentive to the employee who sold the car. When Ms. Marteen tried to collect her commission bonus from Defendant, Ms. Castro denied her the earned compensation.

85.     Ms. Marteen was disappointed, frustrated, and sad that she went above and beyond to help sell a client a car and Ms. Castro refused to grant Ms. Marteen the standard compensation for a referral. Ms. Marteen complained about Ms. Castro's denial of any compensation.

86.     On or around December 29, 2023, the day after Ms. Marteen complained, Ms. Castro took her first step in unilaterally ousting Ms. Marteen by issuing a "Final Written Warning" to Ms. Marteen.

87.     The warning stated that Ms. Marteen was being reprimanded for scheduling issues and tardiness. Ms. Marteen was very confused because her schedule was from 1:00pm to 9:00pm but the written warning alleges Ms. Marteen was late for showing up to work at 11:33am.

88.     Importantly, this was the first and only time Defendant issued a warning to Ms. Marteen, yet Ms. Castro intentionally selected the "Final Written Warning" box which threatened Ms. Marteen's employment rather than selecting "Written warning."

89.     On or around January 2, 2024, Ms. Marteen responded to Ms. Castro's threat by emailing Ms. Castro. Ms. Marteen highlighted that Ms. Diaz and Ms. Castro were ignoring Ms.

Marteen's request for more hours, as they assigned the additional hours to the aforementioned younger employees.

90.     Further, Ms. Marteen addressed that she was written up for appearing late by appearing at 11:33am, but her shift, as per her accommodation, started at 1:00pm, so she could not have been late. Ms. Marteen additionally explained that her absences were related to medical-leave and was not paid for her time off.

91.     Finally, Ms. Marteen concluded, "unfortunately, it is my belief, Ms. Castro has singled me out... and more so since my request for Reasonable Accommodations."

92.     Unsurprisingly, Ms. Castro did not take any corrective measures or engage in an interactive dialogue to accommodate Ms. Marteen.

93.     On or around January 18, 2024, Ms. Marteen emailed Robert Kussell ("Mr. Kussell"), Defendant DAG's Chief Financial Officer, and Ms. Muniz, regarding Ms. Castro's behavior.

94.     Ms. Marteen complained to Mr. Kussell and Ms. Muniz that Ms. Castro's conduct was part of a "pattern of [Ms. Castro's] harassment of me...," among other issues with Ms. Castro's behavior, including the failure to give Ms. Marteen a commission for selling the car.

95.     The very next day, on or around January 19, 2024, Ms. Castro ordered Ms. Marteen into her office. Ms. Marteen was sure that she was going to be receiving the referral commission after emailing the Defendant's CFO. Upon Ms. Marteen entering the office, Ms. Castro smiled, paused, and simply told Ms. Marteen, "You're fired."

96.     Ms. Diaz accompanied Ms. Marteen to the employee lounge to retrieve her personal belongings, before escorting Ms. Marteen off of Defendant's property.

97.     On or around January 19, 2024, Defendant DAG terminated Ms. Marteen.

98.    Defendant DAG unlawfully and wrongfully terminated Ms. Marteen, because of her age and disability, and in retaliation for requesting an accommodation and complaining about unlawful conduct.

99.    Ms. Marteen specifically complained to Defendant's CFO, General Manager, HR Director, and other managers, about Defendant DAG's hostile work environment and unlawful discriminatory activity.

100.    The events described above are just a few examples of unlawful discrimination and retaliation that Defendant DAG subjected Ms. Marteen to on a continuous and ongoing basis throughout her employment.

101.    Defendant DAG unlawfully discriminated against Ms. Marteen because of her age and disability.

102.    Defendant DAG failed to reasonably accommodate Ms. Marteen's disability-related accommodation requests as required by law.

103.    Defendant DAG retaliated against Ms. Marteen for requesting disability-related accommodations and for opposing Ms. Castro's unlawful and discriminatory conduct.

104.    Defendant DAG wrongfully denied Ms. Marteen FMLA leave to which she was entitled.

105.    Defendant DAG retaliated against Ms. Marteen for requesting FMLA leave to which she was entitled.

106.    Thus, Defendant DAG violated the ADEA, FMLA, ADA, FCRA and MDHRO by failing to accommodate Ms. Marteen and by subjecting Ms. Marteen to disparate treatment, hostile work environment, retaliation, and wrongful termination.

107.   Defendant's discrimination, retaliation, and unlawful termination against Ms. Marteen is in violation of the ADEA, FMLA, ADA, FCRA and the MDHRO.

108.   Ms. Marteen claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

109.   At all relevant times, Defendant's employees were acting as agents of Defendant in their discriminatory, retaliatory, and unlawful treatment of Ms. Marteen.

110.   At all relevant times, Defendant acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

111.   As a result of Defendant's actions, Ms. Marteen felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

112.   As a result of the acts and conduct complained herein, Ms. Marteen has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Marteen has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Marteen has further experienced severe emotional and physical distress.

113.   Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

114.   Defendant is either directly or vicariously responsible for the unlawful facts and conduct complained of herein.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 623
#### *ADEA Age Discrimination*

115.    Plaintiff reincorporates the factual allegations in paragraphs 20 through 114.

116.    The ADEA provides, in relevant part, that "it shall be unlawful for an employer...
to fail or refuse to hire or to discharge any individual or otherwise discriminate against any
individual with respect to his compensation, terms, conditions, and privileges of employment,
because of such individual's age." 29 U.S.C. § 623(a)(1).

117.    At all times material, Plaintiff was over 40 years of age, and was therefore a
protected class member under the ADEA.

118.    The elements of a prima facie case of disparate treatment are flexible and tailored
on a case-by-case basis to differing factual circumstances.

119.    Defendant subjected Ms. Marteen to discriminatory treatment on the basis of her
age. Defendant's discriminatory treatment included, but was not limited to, 1) subjecting Ms.
Marteen to discriminatory comments regarding her disability, 2) screaming at and verbally abusing
Ms. Marteen in front of coworkers and customers, 3) assigning unfavorable tasks to Ms. Marteen
compared to her younger colleagues, 4) assigning tasks to Ms. Marteen that fell outside the scope
of her position, 5) refusing Ms. Marteen access to the restroom following her request for a
reasonable accommodation, 6) refusing Ms. Marteen any lunch breaks following her request for a
reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8)
reducing Ms. Marteen's hours after she requested an accommodation, and 9) unlawfully
terminating Ms. Marteen's employment, among others.

120.    Defendant targeted Plaintiff because of her age and because of her age-related health problems. No similarly situated employees under the age of 40 were subjected to the same discriminatory treatment that Plaintiff was subjected to.

121.    The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for the purposes of the ADEA. In subjecting Plaintiff to adverse employment actions, the Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

122.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the ADEA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

123.    The conduct of the Defendant deprived Plaintiff of her statutory rights guaranteed under the ADEA.

124.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**29 U.S.C. § 623**
*ADEA Retaliation*

125.    Plaintiff reincorporates the factual allegations in paragraphs 20 through 114.

126.    The ADEA prohibits retaliation in any manner against a person who has opposed a discriminatory practice or who has participated in any investigation, proceeding, or litigation related to an unlawful discriminatory practice. 29 U.S.C. § 623(d).

127.    At all times material, Plaintiff was over 40 years of age, and was therefore a protected class member under the ADEA.

128.    Plaintiff engaged in a protected activity when she opposed the Defendant's unlawful discriminatory conduct on the basis of her age.

129.    Plaintiff acted in good faith and with the objective and subjective belief that Defendant had committed violations of the ADEA.

130.    In response to Plaintiff opposing the discriminatory conduct and asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Plaintiff.

131.    Defendant retaliated against Ms. Marteen by engaging in conduct, including but not limited to, requiring Ms. Marteen perform more work assignments than her younger co-workers; subjecting Ms. Marteen to harsher scrutiny and discipline than her younger co-workers; disciplining Ms. Marteen under false pretenses; requiring Ms. Marteen to work alongside her harassers; at times, ignoring Ms. Marteen in the workplace; demoting Ms. Marteen; denying Ms. Marteen the right to eat food or use the restroom in the workplace; and unlawfully terminating Ms. Marteen's employment.

132.    Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of her protected activities, including making reports of discrimination to her managers, supervisors, and even Defendant's CFO.

133.    Any reasonable employee in Plaintiff's position would be dissuaded from opposing discriminatory conduct if they knew they would be subjected to the same kind of treatment that Plaintiff was subjected to.

134.    Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant's conduct.

135.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the ADEA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

136.    The conduct of the Defendant deprived Plaintiff of her statutory rights guaranteed under the ADEA.

137.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT III
### 29 U.S.C. § 2615
### *FMLA Interference*

138.    Plaintiff reincorporates the factual allegations in paragraphs 20 through 114.

139.    Employers are prohibited from interfering with, restraining, or denying the exercise or attempted exercise of any right protected by the FMLA. 29 U.S.C. § 2615.

140.    By nature of Plaintiff's employment with Defendant, Plaintiff was an eligible employee and was entitled to leave benefits under the FMLA.

141.    In or around September of 2023, Defendant was on notice of Plaintiff's entitlement to FMLA leave.

142.     Plaintiff suffered from a serious health condition as defined in 29 U.S.C. § 2611(11).

143.     Defendant violated the FMLA by unlawfully interfering, restraining, and denying Plaintiff's use and/or attempted use of her leave benefits under the FMLA. Specifically, Defendant instructed Plaintiff to return to work less than one (1) week following her heart attack in September of 2023, after she was rescued from Defendant's premises by emergency medical staff while suffering a heart attack.

144.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

145.     The conduct of the Defendant deprived Plaintiff of her statutory rights guaranteed under the FMLA.

146.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**29 U.S.C. §2615**
*FMLA Retaliation*

147.     Plaintiff reincorporates the factual allegations in paragraphs 20 through 114.

148.     Employers are prohibited from retaliating against an employee in any manner for having exercised or attempted to exercise protected rights under the FMLA or using the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

149.     Employers are prohibited from retaliating against an employee in any manner for opposing or complaining about any unlawful practice under the FMLA. 29 C.F.R. § 825.220(a)(2).

150.     By nature of Plaintiff's employment with Defendant, Plaintiff was an eligible employee and was entitled to leave benefits under the FMLA.

151.     In or around September of 2023, Defendant was on notice of Plaintiff's entitlement to FMLA leave.

152.     Plaintiff suffered from a serious health condition as defined in 29 U.S.C. § 2611(11).

153.     Plaintiff engaged in a protected activity when she exercised and/or attempted to exercise her right to leave benefits under the FMLA and when she opposed the Defendant's unlawful conduct in violation of the FMLA.

154.     Plaintiff acted in good faith and with the objective and subjective belief that she was entitled to leave benefits under the FMLA and that Defendant had committed violations of the FMLA.

155.     Defendant retaliated against Ms. Marteen by engaging in conduct, including but not limited to, requiring Ms. Marteen perform more work assignments than her younger, non-disabled co-workers; subjecting Ms. Marteen to harsher scrutiny and discipline than her younger, non-disabled co-workers; disciplining Ms. Marteen under false pretenses; requiring Ms. Marteen to work alongside her harassers; at times, ignoring Ms. Marteen in the workplace; demoting Ms. Marteen; denying Ms. Marteen the right to eat food or use the restroom in the workplace; and unlawfully terminating Ms. Marteen's employment.

156.     Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of her protected activities.

157.    Any reasonable employee in Plaintiff's position would be dissuaded from opposing unlawful conduct if they knew they would be subjected to the same kind of treatment that Plaintiff was subjected to.

158.    Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant's conduct.

159.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

160.    The conduct of the Defendant deprived Plaintiff of her statutory rights guaranteed under the FMLA.

161.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**<u>COUNT V</u>**
**42 U.S.C. § 12112**
*ADA Discrimination*

162.    Plaintiff reincorporates the factual allegations in Paragraphs 20 through 114.

163.    The ADA requires that an employer make reasonable accommodations to the known limitations of a qualified individual with a disability and to engage in an interactive process to arrive at the accommodation. 42 U.S.C. § 12112(b)(5).

164.   At all relevant times, Plaintiff was an individual with a disability within the meaning of the 42 U.S.C. § 12102(1) as she suffered from diabetes and a heart attack that substantially limited one or more major life activities such as eating, drinking, walking, standing, motor skills, hearing, concentrating, and sleeping, among others.

165.   Plaintiff had impairments that would substantially limit one or more major life activities and bodily functions, had a record of the impairment, and was regarded by the Defendant as having such impairments.

166.   Plaintiff had known physical impairments and limitations related to her diabetes, including but not limited to the daily need for insulin, dietary requirements, restroom access, among others.

167.   Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8), as she could perform the essential functions of her job with or without reasonable accommodations.

168.   Plaintiff requested accommodations for her disability from Defendant including but not limited to, taking medical leave following the heart attack she suffered while at work, reducing or modifying her work schedule to accommodate her medical condition, requesting the right to use the restroom while at work, requesting the right to eat food while at work, and modifications to work assignments.

169.   Defendant failed to reasonably accommodate Plaintiff's disability and failed to engage in an interactive process regarding her accommodation requests.

170.   Defendant discriminated against Plaintiff by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, making discriminatory remarks about Plaintiff's disability, denying Plaintiff the benefits owed to her, requiring Ms.

Marteen perform more work assignments than her non-disabled co-workers; subjecting Ms. Marteen to harsher scrutiny and discipline than her non-disabled co-workers; disciplining Ms. Marteen under false pretenses; requiring Ms. Marteen to work alongside her harassers; at times, ignoring Ms. Marteen in the workplace; demoting Ms. Marteen; denying Ms. Marteen the right to eat food or use the restroom in the workplace; and unlawfully terminating Ms. Marteen's employment.

171.    Defendant discriminated against Plaintiff in violation of the ADA and interfered with Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of her employment.

172.    The discriminatory actions of the Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for the purposes of the ADA. In subjecting Plaintiff to adverse employment actions, the Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

173.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the ADA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

174.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages, in addition to compensatory damages.

175.    The conduct of the Defendant deprived Plaintiff of her statutory rights guaranteed under the ADA.

176.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**<u>COUNT VI</u>**
**42 U.S.C. § 12203**
*ADA Retaliation*

177.    Plaintiff reincorporates the factual allegations in Paragraphs 20 through 114.

178.    The ADA prohibits retaliation against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 12203(a).

179.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the 42 U.S.C. § 12102(1) as she suffered from diabetes and a heart attack that substantially limited one or more major life activities such as eating, drinking, walking, standing, motor skills, hearing, concentrating, and sleeping, among others.

180.    Plaintiff had impairments that would substantially limit one or more major life activities and bodily functions, had a record of the impairment, and was regarded by the Defendant as having such impairments.

181.    Plaintiff had known physical impairments and limitations related to her diabetes, including but not limited to the daily need for insulin, dietary requirements, restroom access.

182.    Plaintiff engaged in a protected activity under the ADA when she informed Defendant of known limitations due to her disability, requested reasonable accommodations from Defendant on account of her known limitations, and when she opposed Defendant's unlawful conduct in violation of the ADA.

183.     In response to Plaintiff asserting her protected rights under the ADA, the Defendant retaliated against Plaintiff.

184.     Defendant retaliated against Plaintiff and interfered with Plaintiff's rights by engaging in conduct, including but not limited to, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, making discriminatory remarks about Plaintiff's disability, denying Plaintiff the compensation and benefits owed to him, requiring Ms. Marteen perform more work assignments than her non-disabled co-workers; subjecting Ms. Marteen to harsher scrutiny and discipline than her non-disabled co-workers; disciplining Ms. Marteen under false pretenses; requiring Ms. Marteen to work alongside her harassers; at times, ignoring Ms. Marteen in the workplace; demoting Ms. Marteen; denying Ms. Marteen the right to eat food or use the restroom in the workplace; and unlawfully terminating Ms. Marteen's employment.

185.     Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of her protected activities.

186.     Any reasonable employee in Plaintiff's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff was forced to endure.

187.     Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

188.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the ADA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages

Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

189.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

190.    The conduct of the Defendant deprived Plaintiff of her statutory rights guaranteed under the ADA.

191.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**§ 760.10(1), Fla. Stat.**
*FCRA Age Discrimination*

192.    Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

193.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's age. § 760.10(1)(a), Fla. Stat.

194.    Ms. Marteen is above the age of 40 and therefore a protected class member.

195.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

196.    Defendant subjected Ms. Marteen to discriminatory treatment on the basis of her age. Defendant's discriminatory treatment included, but was not limited to 1) subjecting Ms. Marteen to discriminatory comments regarding her age, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) assigning unfavorable tasks to Ms. Marteen, 4) assigning tasks to Ms. Marteen that fell outside the scope of her position, 5) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 6) refusing Ms.

Marteen any lunch breaks following her request for a reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8) reducing Ms. Marteen's hours after she requested an accommodation, and 9) unlawfully terminating Ms. Marteen's employment, among others.

197.     Defendant targeted Ms. Marteen because she is an individual above the age of 40. No similarly situated employee outside of her protected class endured the discriminatory conduct that Ms. Marteen was forced to endure.

198.     The discriminatory actions of Defendant against Ms. Marteen, as described and set forth above, constitute adverse employment actions for purposes of the FCRA.  In subjecting Ms. Marteen to adverse employment actions, Defendant intentionally discriminated against Ms. Marteen with respect to the compensation, terms, conditions, or privileges of her employment.

199.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

200.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Marteen's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

201.     The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the FCRA.

28

202.     Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VIII
### § 760.10(1), Fla. Stat.
### *FCRA Disability Discrimination*

203.     Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

204.     The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's handicap. § 760.10(1)(a), Fla. Stat.

205.     Ms. Marteen is disabled and is therefore a protected class member.

206.     Ms. Marteen is diabetic and suffered a heart attack in the end of 2023.

207.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

208.     Defendant subjected Ms. Marteen to discriminatory treatment on the basis of her disability. Defendant's discriminatory treatment included, but was not limited to, 1) subjecting Ms. Marteen to discriminatory comments regarding her disability, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) assigning unfavorable tasks to Ms. Marteen, 4) assigning tasks to Ms. Marteen that fell outside the scope of her position, 5) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 6) refusing Ms. Marteen any lunch breaks following her request for a reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8) reducing Ms. Marteen's hours after she requested an accommodation, and 9) unlawfully terminating Ms. Marteen's employment, among others.

209.    Defendant targeted Ms. Marteen because she is disabled. No similarly situated employee outside her protected class endured the discriminatory conduct that Ms. Marteen was forced to endure.

210.    The discriminatory actions of Defendant against Ms. Marteen, as described and set forth above, constitute adverse employment actions for purposes of the FCRA.  In subjecting Ms. Marteen to adverse employment actions, Defendant intentionally discriminated against Ms. Marteen with respect to the compensation, terms, conditions, or privileges of her employment.

211.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

212.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Marteen's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

213.    The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the FCRA.

214.    Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT IX
### § 760.10(1), Fla. Stat.
### *FCRA Hostile Work Environment*

215.    Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

216.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's age and handicap. § 760.10(1)(a), Fla. Stat.

217.    Ms. Marteen is disabled individual above the age of 40 and is therefore a protected class member.

218.    Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

219.    Defendant's severe and pervasive conduct included, but was not limited to, 1) subjecting Ms. Marteen to discriminatory comments regarding her age and disability, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) screaming at Ms. Marteen while she suffered a heart attack, 4) failing to call the paramedics for immediate assistance while Ms. Marteen was writhing in pain and unable to breathe, 5) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 6) refusing Ms. Marteen any lunch breaks following her request for a reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8) reducing Ms. Marteen's hours after she requested an accommodation, and 9) unlawfully terminating Ms. Marteen's employment, among others.

220.    Defendant's discriminatory conduct was targeted towards Ms. Marteen because she is a disabled individual over the age of 40. No similarly situated employees endured the discriminatory conduct that Ms. Marteen was forced to endure.

221.     Defendant's discriminatory conduct towards Ms. Marteen negatively and significantly impacted Ms. Marteen's life. Defendant's conduct made Ms. Marteen feel isolated, embarrassed, and ashamed.

222.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

223.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Marteen's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

224.     The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the FCRA.

225.     Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT X
### § 760.10(7), Fla. Stat.
### *FCRA Retaliation*

226.     Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

227.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

228.     Ms. Marteen engaged in a protected activity when she opposed Defendant's unlawful discriminatory conduct on the basis of her age and disability and complained about the unlawful discrimination she was experiencing.

229.     In response to Ms. Marteen opposing the discriminatory conduct and asserting her right to enjoy the same employment benefits as every other employee, Defendant retaliated against Ms. Marteen.

230.     Defendant retaliated against Ms. Marteen by engaging in conduct, including but not limited to, requiring Ms. Marteen perform more work assignments than her younger, non-disabled co-workers; subjecting Ms. Marteen to harsher scrutiny and discipline than her younger, non-disabled co-workers; disciplining Ms. Marteen under false pretenses; requiring Ms. Marteen to work alongside her harassers; at times, ignoring Ms. Marteen in the workplace; demoting Ms. Marteen; denying Ms. Marteen the right to eat food or use the restroom in the workplace; and unlawfully terminating Ms. Marteen's employment.

231.     Defendant took the above-mentioned materially adverse actions, among others, against Ms. Marteen because of her protected activities.

232.     Any reasonable employee in Ms. Marteen's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Marteen was forced to endure.

233.     Defendant's alleged bases for its adverse employment actions against Ms. Marteen are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

234.     In fact, the very next day after Ms. Marteen brought forth a complaint of unlawful harassment and discrimination to Defendant's CFO, Defendant DAG terminated Ms. Marteen.

235.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

236.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Marteen's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

237.     The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the FCRA.

238.     Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT XI
#### § 760.10(7), Fla. Stat.
#### *FCRA Retaliatory Hostile Work Environment*

239.     Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

240.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

241.     Ms. Marteen was subjected to a retaliatory hostile work environment because she engaged in protected activity by opposing unlawful conduct in the form of age and disability discrimination. In fact, Ms. Marteen reported the unlawful behavior on numerous occasions to Defendant's managers, supervisors, human resources, and Chief Financial Officer.

242.     Ms. Marteen's opposition was made in good faith and was objectively and subjectively reasonable.

243.     After Ms. Marteen engaged in protected activity, she was subjected to a clear increase in hostility and volatility of the unwelcome harassment, of which her protected activity was a but-for cause.

244.     Following Ms. Marteen's reports of unlawful activity, she was required to continue working with her harassers, who knew that Ms. Marteen had reported them. Ms. Marteen's harassers were not disciplined as a result of her reports and complaints, so they continued to yell at Ms. Marteen; make age-related comments to Ms. Marteen; assign Ms. Marteen unfavorable tasks; at times ignore Ms. Marteen altogether; deny Ms. Marteen's accommodation requests; and impose workplace restrictions specifically for Ms. Marteen, including denying Ms. Marteen the ability to eat food, drink water, or use the restroom while at work.

245.     The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

246.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

247.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Marteen's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

248.     The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the FCRA.

249.     Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

<u>COUNT XII</u>
**§ 11A-26(1), Code of Miami-Dade County**
*MDHRO Age Discrimination*

250.     Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

251.     The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's age. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

252.     Ms. Marteen is above the age of 40 and therefore a protected class member.

253.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

254.     Defendant subjected Ms. Marteen to discriminatory treatment on the basis of her age. Defendant's discriminatory treatment included, but was not limited to 1) subjecting Ms. Marteen to discriminatory comments regarding her age, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) assigning unfavorable tasks to Ms. Marteen, 4) assigning tasks to Ms. Marteen that fell outside the scope of her position, 5) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 6) refusing Ms. Marteen any lunch breaks following her request for a reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8) reducing Ms. Marteen's hours after she

requested an accommodation, and 9) unlawfully terminating Ms. Marteen's employment, among others.

255.    Defendant targeted Ms. Marteen because she is an individual above the age of 40. No similarly situated employee outside of her protected class endured the discriminatory conduct that Ms. Marteen was forced to endure.

256.    The discriminatory actions of Defendant against Ms. Marteen, as described and set forth above, constitute adverse employment actions for purposes of the MDHRO.  In subjecting Ms. Marteen to adverse employment actions, Defendant intentionally discriminated against Ms. Marteen with respect to the compensation, terms, conditions, or privileges of her employment.

257.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

258.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Marteen's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

259.    The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the MDHRO.

260.    Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT XIII
### § 11A-26(1), Code of Miami-Dade County
### *MDHRO Disability Discrimination*

261.     Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

262.     The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

263.     The MDHRO further prohibits discrimination with respect to an employer refusing or failing to make a reasonable accommodation for a disabled individual. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1)(d).

264.     Ms. Marteen is disabled and is therefore a protected class member.

265.     Ms. Marteen is diabetic and suffered a heart attack in the end of 2023.

266.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

267.     Defendant subjected Ms. Marteen to discriminatory treatment on the basis of her disability. Defendant's discriminatory treatment included, but was not limited to, 1) subjecting Ms. Marteen to discriminatory comments regarding her disability, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) assigning unfavorable tasks to Ms. Marteen, 4) assigning tasks to Ms. Marteen that fell outside the scope of her position, 5) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 6) refusing Ms. Marteen any lunch breaks following her request for a reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8) reducing Ms. Marteen's hours after she

requested an accommodation, and 9) unlawfully terminating Ms. Marteen's employment, among others.

268.    Defendant targeted Ms. Marteen because she is disabled. No similarly situated employee outside her protected class endured the discriminatory conduct that Ms. Marteen was forced to endure.

269.    The discriminatory actions of Defendant against Ms. Marteen, as described and set forth above, constitute adverse employment actions for purposes of the MDHRO.  In subjecting Ms. Marteen to adverse employment actions, Defendant intentionally discriminated against Ms. Marteen with respect to the compensation, terms, conditions, or privileges of her employment.

270.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

271.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Marteen's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

272.    The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the MDHRO.

273.    Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XIV**
**§ 11A-26(1), Code of Miami-Dade County**
*MDHRO Hostile Work Environment*

274.    Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

275.    The MDHRO prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's age or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

276.    Ms. Marteen is disabled individual above the age of 40 and is therefore a protected class member.

277.    Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

278.    Defendant's severe and pervasive conduct included, but was not limited to, 1) subjecting Ms. Marteen to discriminatory comments regarding her age and disability, 2) screaming at and verbally abusing Ms. Marteen in front of coworkers and customers, 3) screaming at Ms. Marteen while she suffered a heart attack, 4) failing to call the paramedics for immediate assistance while Ms. Marteen was writhing in pain and unable to breathe, 5) refusing Ms. Marteen access to the restroom following her request for a reasonable accommodation, 6) refusing Ms. Marteen any lunch breaks following her request for a reasonable accommodation, 7) demoting Ms. Marteen following her return from medical leave, 8) reducing Ms. Marteen's hours after she requested an accommodation, and 9) unlawfully terminating Ms. Marteen's employment, among others.

279.    Defendant's discriminatory conduct was targeted towards Ms. Marteen because she is a disabled individual over the age of 40. No similarly situated employees endured the discriminatory conduct that Ms. Marteen was forced to endure.

280.     Defendant's discriminatory conduct towards Ms. Marteen negatively and significantly impacted Ms. Marteen's life. Defendant's conduct made Ms. Marteen feel isolated, embarrassed, and ashamed.

281.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

282.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Marteen's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

283.     The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the MDHRO.

284.     Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

<u>COUNT XV</u>
**§ 11A-43(1), Code of Miami-Dade County**
*MDHRO Retaliation*

285.     Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

286.     The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or

hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

287.   Ms. Marteen engaged in a protected activity when she opposed Defendant's unlawful discriminatory conduct on the basis of her age and disability and complained about the unlawful discrimination she was experiencing.

288.   In response to Ms. Marteen opposing the discriminatory conduct and asserting her right to enjoy the same employment benefits as every other employee, Defendant retaliated against Ms. Marteen.

289.   Defendant retaliated against Ms. Marteen by engaging in conduct, including but not limited to, requiring Ms. Marteen perform more work assignments than her younger, non-disabled co-workers; subjecting Ms. Marteen to harsher scrutiny and discipline than her younger, non-disabled co-workers; disciplining Ms. Marteen under false pretenses; requiring Ms. Marteen to work alongside her harassers; at times, ignoring Ms. Marteen in the workplace; demoting Ms. Marteen; denying Ms. Marteen the right to eat food or use the restroom in the workplace; and unlawfully terminating Ms. Marteen's employment.

290.   Defendant took the above-mentioned materially adverse actions, among others, against Ms. Marteen because of her protected activities.

291.   Any reasonable employee in Ms. Marteen's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Marteen was forced to endure.

292.   Defendant's alleged bases for its adverse employment actions against Ms. Marteen are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

293.    In fact, the very next day after Ms. Marteen brought forth a complaint of unlawful harassment and discrimination to Defendant's CFO, Defendant DAG terminated Ms. Marteen.

294.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

295.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Marteen's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

296.    The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the MDHRO.

297.    Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XVI**
**§ 11A-43(1), Code of Miami-Dade County**
*MDHRO Retaliatory Hostile Work Environment*

298.    Ms. Marteen reincorporates the factual allegations in paragraphs 20 through 114.

299.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

300.     Ms. Marteen was subjected to a retaliatory hostile work environment because she engaged in protected activity by opposing unlawful conduct in the form of age and disability discrimination. In fact, Ms. Marteen reported the unlawful behavior on numerous occasions to Defendant's managers, supervisors, human resources, and Chief Financial Officer.

301.     Ms. Marteen's opposition was made in good faith and was objectively and subjectively reasonable.

302.     After Ms. Marteen engaged in protected activity, she was subjected to a clear increase in hostility and volatility of the unwelcome harassment, of which her protected activity was a but-for cause.

303.     Following Ms. Marteen's reports of unlawful activity, she was required to continue working with her harassers, who knew that Ms. Marteen had reported them. Ms. Marteen's harassers were not disciplined as a result of her reports and complaints, so they continued to yell at Ms. Marteen; make age-related comments to Ms. Marteen; assign Ms. Marteen unfavorable tasks; at times ignore Ms. Marteen altogether; deny Ms. Marteen's accommodation requests; and impose workplace restrictions specifically for Ms. Marteen, including denying Ms. Marteen the ability to eat food, drink water, or use the restroom while at work.

304.     The above-alleged harassment was such that it would have dissuaded any reasonable worker from making or supporting a charge of discrimination.

305.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Ms. Marteen has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Marteen has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Marteen accordingly demands lost economic damages, lost wages, back

pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

306.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Marteen's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

307.    The conduct of Defendant deprived Ms. Marteen of her statutory rights guaranteed under the MDHRO.

308.    Ms. Marteen further requests that her attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of the ADEA, FMLA, ADA, FCRA and MDHRO.

Dated:  Miami, Florida
             November 20, 2024,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Danielb@dereksmithlaw.com